STATE OF CONNECTICUT *v.* LARRY L. BIGELOW, JR.
(AC 29787)

Bishop, DiPentima and Schaller, Js.*

Argued January 6—officially released April 27, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Devin T. Stilson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Larry L. Bigelow, Jr., appeals from the judgment of conviction, rendered after

a court trial, of possession of a controlled substance in violation of General Statutes § 21a-279 (c) and possession of a controlled substance within 1500 feet of a school in violation of § 21a-279 (d).[1] On appeal, the defendant claims that the court abused its discretion in not finding him incompetent to stand trial. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. On June 15, 2006, members of the Torrington police department executed search and seizure warrants at the defendant's residence, a first floor apartment located at 10 Grove Street. After entering the residence, Lieutenant Todd M. Schaller observed the defendant lying on a couch. Officers, after detecting the odor of marijuana, searched the residence and seized marijuana located in a computer room. The defendant was placed under arrest, and he made a general statement to the effect of "you got me."

The defendant elected a trial to the court. After several days of evidence, the court found the defendant guilty of possession of a controlled substance, marijuana, and possession of that substance within 1500 feet of a school. With respect to the charges relating to cocaine found in a vehicle used by the defendant, the court concluded that the evidence was insufficient as to the issue of possession.[2] Accordingly, it found him not guilty of these offenses. The court sentenced the defendant to five years incarceration, suspended after three years, and three years probation. This appeal followed.

---

[1] The court found the defendant not guilty of possession of a narcotic substance in violation of § 21a-279 (a), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). These charges stemmed from cocaine that was seized from a vehicle used by the defendant.

[2] See footnote 1 of this opinion.

On appeal, the sole issue raised by the defendant is that the court abused its discretion in not finding him incompetent to stand trial. Specifically, he claims that the court improperly found that he had a rational understanding of the facts and procedures and was capable of rationally assisting his counsel in defending against the charges. We are not persuaded by the defendant's arguments.

The following additional facts are necessary for our discussion. At a hearing held on January 23, 2007, the defendant rejected a plea offer and elected to proceed to a trial. During a discussion with the court, the defendant stated that his attorney, Mark S. Solak, had failed to provide him with certain "critical documents" and that Solak had "switched" documents received from the police. The defendant then indicated that he was not comfortable with Solak.

On May 7, 2007, Solak filed a motion to withdraw as the defendant's counsel pursuant to Practice Book § 3-10. He stated that the attorney-client relationship had broken down irretrievably, such that he could not represent the defendant effectively. A hearing on Solak's motion was conducted on May 15, 2007. Solak represented that the defendant had filed "grievances" against members of the judiciary assigned to the Litchfield courthouse and that the defendant was insisting on pursing a defense strategy that would place Solak in danger of violating rule 3.1 of the Rules of Professional Conduct.[3] The defendant stated that he believed that

---

[3] Rule 3.1 of the Rules of Professional Conduct provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established."

the signature on the warrants had been forged and that the judge, prosecutor and Solak had conspired to "get [the defendant] to plead guilty . . . ." After hearing from Solak and the defendant, the court, *Gill, J.*, denied the motion to withdraw as counsel. Immediately following the court's ruling, Solak requested a competency examination pursuant to General Statutes § 54-56d. The court denied that request.

At the next court proceeding, Solak renewed his motion for a competency hearing. Solak was concerned with the defendant's belief of a conspiracy to convict him that included the office of the state's attorney and three judges assigned to the Litchfield judicial district. The court, *O'Keefe, J.*, granted the motion for a competency examination over the defendant's objection.

Pursuant to the court's order, a competency evaluation was performed on June 6, 2007. The team conducting the evaluation consisted of Paul Amble, a psychiatrist, Robert Sutton, a clinical psychologist, and Julie M. Wilson, a licensed clinical social worker. The team unanimously concluded that the defendant was able to understand the legal proceedings pending against him and was able to assist in his defense. The basis for this opinion was a ninety minute evaluation and consideration of various documents. Although the report ultimately concluded that the defendant was competent to stand trial, it contained the following statement: "It is also important to note that during this evaluation the defendant engaged in legal discussions that the team was unable to interpret whether they were reality based due to our limited legal background."

After receiving the report, the court held a hearing on June 15, 2007, to obtain additional information. Wilson, the author of the competency report, testified and was asked to expound on the statement in the report regarding the team's limited legal background. Wilson

stated that the defendant had discussed complex allegations of misconduct by various people and that the team was unable to determine the veracity of those claims. Following Wilson's testimony, the court stated: "My belief is that I probably, after argument, could make a call on this based on [a section of the report], but in a system like ours, it's never a mistake to take a little more time to focus on this issue, which appears to be an important one for you and for your client and for me because it's my job to make sure he gets a fair trial." Solak then requested a second competency evaluation on the basis of the defendant's fixed beliefs regarding the conspiracy and forged signatures and what Solak called the defendant's traits of delusional paranoia. The court ordered a reexamination of the defendant.

The second competency examination was conducted on June 28, 2007, by the team of James Phillips, a psychiatrist, Sutton and Wilson, the author of the second report. Solak observed the evaluation and provided legal clarification to the team when needed. The team unanimously concluded that the defendant exhibited a factual, but not a rational, understanding of the legal proceedings pending against him and that he was unable to assist in his defense. The team described the defendant's thought content as "grandiose and persecutory and consisted of rigid beliefs regarding alleged misconduct perpetrated by the police and various court personnel . . . ." He also exhibited rigid beliefs regarding Solak's knowledge of the instances of misconduct and believed that Solak had lied to him. The defendant further expressed his belief that Solak was " 'working with the state.' " The report concluded by indicating that there was a substantial probability that the defendant could be restored to competency following inpatient psychiatric evaluation and treatment.

On July 10, 2007, the court conducted a hearing regarding the second competency report. Wilson again

testified and stated that the examination of the defendant took approximately ninety minutes. She further stated that the team unanimously recommended that the defendant receive treatment in the least restrictive form consistent with restoration at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting). The court found the defendant not to be competent to stand trial and that there was a substantial probability that he would regain competency within sixty days.[4]

On August 31, 2007, Harry Hernandez, a licensed clinical social worker, evaluated the defendant and subsequently wrote a report dated September 5, 2007, detailing the defendant's time at Whiting.[5] The defendant had attended most of the assigned therapeutic groups and had not displayed any mood fluctuations, paranoia or disorganization. Although he described the judicial system as "corrupt," he was "able to discuss his charges, understand potential penalties and describe various ways that the charges could be resolved." During the evaluation, the defendant stated that he was willing to listen to Solak and work with him. The defendant further indicated that Solak was " 'on [his] side.' " The report also noted that although the defendant displayed a mistrust of the judicial system, this was "not

---

[4] "In *Jackson* v. *Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972), the United States Supreme Court held that, under the due process clause of the fourteenth amendment to the federal constitution, a person charged by a [s]tate with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the [s]tate must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. . . . Section 54-56d codifies this aspect of the constitutional right to due process." (Citation omitted; internal quotation marks omitted.) *State* v. *Jenkins*, 288 Conn. 610, 618–19, 954 A.2d 806 (2008).

[5] The report was signed by Hernandez and Patrick K. Fox, a physician and the director of Whiting.

a product of any thought disorder or any mental illness. Since his admission . . . [the defendant] hasn't shown any evidence of delusional thinking or paranoid ideation. There is no evidence that he suffers from a mental illness. [The defendant] might choose not to cooperate with his attorney or to act out in court as a way to prolong his hospitalization and avoid resolution of his case." The report ultimately recommended that the defendant be found competent to stand trial.

The court held a third hearing on September 26, 2007, during which Hernandez testified. Hernandez stated that his report was done in consultation with the treatment team that had worked with the defendant. Hernandez also testified that two forensic psychiatrists had seen the defendant and that he had reviewed their notes. He indicated that an individual can only suffer from fixed false beliefs if that individual was mentally ill and that the two forensic psychiatrists believed that the defendant was not suffering from any mental illness that would prevent him from being competent. Hernandez further stated that he had spoken with the defendant at length about "everything" and did not find that the defendant suffered from any fixed false beliefs about the case pending against him.

During questioning by the prosecutor, Hernandez expressly testified that the defendant did not have a fixed false belief with respect to the forgery of the search warrants or certain facts reported in the police affidavit that was the basis of the search warrants. In response, Solak asked if, assuming that the defendant had a fixed false belief that the signatures on the search warrants were forged even though there was not a legitimate rational basis for that belief, Hernandez still believed that the defendant did not suffer from a fixed false belief. Hernandez responded that there would be no fixed false belief because the defendant did not suffer from a mental illness. Last, Hernandez stated that

he did not believe that the defendant maintained the belief that a conspiracy of judges, prosecutors and police officers were out "to get him."

The court found both Hernandez and the report to be credible. The court, after citing to various sections of the report, agreed with its conclusion and found the defendant competent to stand trial. Specifically, the court stated: "As I said . . . [the defendant] has demonstrated to my satisfaction and to the standard required by law that he has the ability to cooperate with the court process and assist his attorney. He certainly understands the charges against him."

Before addressing the specific claims of the defendant, we set forth the applicable standard of review and legal principles germane to this case. "We review the court's determination of competency under an abuse of discretion standard. *State* v. *Johnson*, 253 Conn. 1, 27 n.26, 751 A.2d 298 (2000). In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . . *State* v. *Hernandez*, 254 Conn. 659, 665–66, 759 A.2d 79 (2000)." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001); see *State* v. *Garcia*, 81 Conn. App. 294, 299–300, 838 A.2d 1064 (2004).

"The conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1 . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Garcia*, 233 Conn. 44, 67, 658 A.2d

947 (1995). "Connecticut jealously guards this right. Therefore, [t]his constitutional mandate is codified in . . . § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 253 Conn. 20; see also *State* v. *Gonzalez*, 205 Conn. 673, 686–87, 535 A.2d 345 (1987).

"The standard we use to determine whether a defendant is competent under state law to stand trial, as set forth in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960), is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *State* v. *Bagley*, 101 Conn. App. 653, 654, 922 A.2d 1128 (2007); see also *State* v. *Ouellette*, 271 Conn. 740, 753 n.17, 859 A.2d 907 (2004) (*Dusky* standard codified at § 54-56d [a]).

"Because a defendant is presumed to be competent, § 54-56d (b) provides that if he raises his competency as an issue, he must prove incompetence by a preponderance of the evidence. Competence is a legal question, which, pursuant to § 54-56d (f), must be determined by the trial court. . . . We review a determination of competency under the abuse of discretion standard. . . . In the application of that standard, we make every reasonable presumption in favor of the correctness of the action of the trial court." (Citations omitted.) *State* v. *Bagley*, supra, 101 Conn. App. 655.

"The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. . . . Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is

raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency." (Internal quotation marks omitted.) *State* v. *Cuesta*, 68 Conn. App. 470, 481, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). We are mindful that "[t]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 523–24, 973 A.2d 627 (2009).

The defendant first argues that the court abused its discretion in not finding him incompetent because Hernandez' opinion rested on the incorrect premise that the defendant must suffer from a mental illness to be found incompetent. Specifically, the defendant claims that due to this incorrect belief, Hernandez' testimony and report do not constitute competent evidence on which the court could properly base its opinion. We are not persuaded.

At the outset, we are mindful of the statement from our Supreme Court that "[c]ompetence to stand trial . . . is not defined in terms of mental illness. An accused may be suffering from a mental illness and nonetheless be able to understand the charges against

him and to assist in his own defense . . . and the fact that the defendant was receiving medication and would require medication during the course of the trial does not render him incompetent." (Citation omitted.) *State v. DeAngelis*, 200 Conn. 224, 230, 511 A.2d 310 (1986); see also *State v. Mordasky*, 84 Conn. App. 436, 446, 853 A.2d 626 (2004). A fortiori, a finding of mental illness is not required for a court to find a defendant incompetent to stand trial.

During his testimony, Hernandez stated that he believed an individual could only suffer from fixed false beliefs if that individual suffered from a mental illness. He also opined that the defendant did not suffer from fixed false beliefs because the defendant was not mentally ill. Last, Hernandez indicated that the defendant's mistrust of the judicial system was not a product of a mental illness.

In concluding that the defendant had failed to sustain his burden of showing that he was incompetent, the court explicitly credited the September 5, 2007 report and testimony of Hernandez as "a representative of the team" from Whiting. The court relied on the nine paragraphs of the report detailing the defendant's understanding of the proceedings, including his discussion of the charges and the various ways they would be resolved, as well as the defendant's understanding of the potential penalties and courtroom process. As to the issue of the defendant's ability to assist in his defense, the court found that the defendant had indicated that he was willing to work with Solak, to listen to him and knew that Solak was "on [his] side" and would defend him against the state's charges. Finally, the court referenced the team's conclusion that the defendant had demonstrated a sufficient understanding of the proceedings and had the ability to assist in his defense. Notably, the court did not mention the issue of whether the defendant suffered from a mental illness.

Although Hernandez' testimony indicated his opinion that the lack of mental illness established that the defendant did not suffer from fixed false beliefs, it is clear that the team's opinion, as set forth in the September 5, 2007 report, and, more importantly, the court's ruling, did not rest on the mental illness question. Simply put, we agree with the state that the court did not base its decision that the defendant was not incompetent on whether the defendant suffered from a mental illness but, rather, on whether the defendant was able to understand the proceedings and assist in his defense. Outside of the issue of mental illness, the report provided the court with sufficient evidence to conclude that the defendant was not incompetent. See *State* v. *Bagley*, supra, 101 Conn. App. 658. We further conclude, on the basis of these facts, that the court did not abuse its discretion in not finding the defendant incompetent. The court properly considered the statutory factors and determined that the defendant had failed to satisfy his burden of establishing incompetence. See *State* v. *Garcia*, supra, 81 Conn. App. 303 (trial court is in particularly advantageous position to observe defendant's conduct and its opinion regarding competency of defendant is highly significant).

The defendant next argues that the meaning of "rational understanding" must be determined by using an objective rationality standard, where the issue is what is rational to an average person, as opposed to what is rational to a psychiatrist or the defendant. This claim was not raised at trial, and the defendant requests review pursuant to either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. We conclude that the record is inadequate to review this claim under *Golding* or the plain error doctrine. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 69 n.3, 967 A.2d 41 (2009) (when record inadequate for *Golding* review,

it is also inadequate for consideration under plain error).

"*Golding* holds that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Bozelko*, 119 Conn. App. 483, 504, 987 A.2d 1102 (2010).

"The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted.) *State* v. *Riggsbee*, 112 Conn. App. 787, 791–92, 963 A.2d 1122 (2009).

There is nothing in the record regarding the meaning used by the court with respect to the "rational understanding" test. Absent any information, we cannot speculate as to whether this claim satisfies *Golding*. Accordingly, we will not engage in review of this argument.

The judgment is affirmed.

In this opinion the other judges concurred.