******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CRAIG HINES
(AC 38002)

Gruendel, Mullins and Mihalakos, Js.*

*Argued December 2, 2015—officially released April 26, 2016*

(Appeal from Superior Court, judicial district of New Haven, Clifford, J. [determination defendant restored to competency]; Vitale, J. [judgment])

*Katherine C. Essington*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Craig Hines, was convicted, following a jury trial, of two counts of murder in violation of General Statutes § 53a-54a (a) and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the court erred (1) in finding that he had been restored to competency to stand trial and (2) in removing him from the courtroom during jury selection. We affirm the judgment of the trial court.

I

The defendant's first claim is that the court abused its discretion when it found at the second of two competency hearings that he had been restored to competency to stand trial. He raises three principal issues with the court's competency determination. First, he argues that the determination was unreasonable because he had not received "treatment" after he initially had been found incompetent by a prior judge. Second, he argues that the court "should have made a further inquiry and/or asked for a third expert opinion regarding [his] competency." Third, he argues that the court "appeared to" have based its determination exclusively on the competency report prepared during his placement for inpatient treatment for the purpose of restoring him to competency. We disagree.

The following history of the proceedings illuminates our consideration of this claim. On September 27, 2013, defense counsel moved pursuant to General Statutes § 54-56d[1] for a competency evaluation because the defendant recently had been evaluated by Allison Downer, the head psychiatrist at the Department of Correction, who had prescribed the defendant an antipsychotic drug to lessen his preoccupation with physical complaints resulting from a bat bite he allegedly suffered while in federal custody.[2] Defense counsel expressed concern that this preoccupation would impair the defendant's competency to stand trial. The court, *Vitale, J.*, ordered that the defendant undergo a competency evaluation.

Pursuant to the court's order, John Bonetti, a psychiatrist, conducted a competency evaluation of the defendant, a report of which he prepared on October 4, 2013. Bonetti reported that during the evaluation the defendant complained of various pains and a chronic cough, which he attributed to the alleged bat bite and for which he claimed he had not received proper medical care; the defendant's fixation on his medical complaints prevented him from focusing on the interview. Bonetti reported that his review of the defendant's medical records, however, revealed no evidence of these conditions.

While preparing the report, Bonetti spoke to Downer, who confirmed the defendant's fixation on the condi-

tions caused by the alleged bat bite and described the defendant as " 'delusional at baseline.' " Likewise, Bonetti noted that the defendant's "delusional thinking interfered with his ability to answer questions as it permeated the entire interview." Bonetti concluded that the defendant was not competent to stand trial but that there was a substantial probability that he could be restored to competency by a sixty day inpatient psychiatric hospitalization.

Thereafter, on October 9, 2013, the court, *O'Keefe*, *J.*, held a competency hearing at which Bonetti testified. Bonetti testified that the defendant's psychiatric records, in which "it was pretty consistently stated that he carries a psychotic diagnosis, either schizophrenia or a delusional disorder," were significant to his conclusion that the defendant was incompetent to stand trial. On the basis of Bonetti's report and testimony, the court found that the defendant was incompetent to stand trial but that there was a substantial probability that he could be restored to competency within sixty days, and the court ordered that he receive inpatient treatment at Connecticut Valley Hospital, Whiting Forensic Division (Whiting) for the purpose of restoring him to competency.

At Whiting, Susan McKinley, a licensed clinical social worker, conducted a second competency evaluation and prepared a report of that evaluation dated December 4, 2013. The second competency report disclosed the following. Neither a physical examination, which was performed on the defendant upon admission, nor blood tests revealed any medical problems that required additional testing or intervention. Nevertheless, the defendant reported that he was in a great deal of pain and complained of a sore throat, difficulty swallowing, " 'tissue decay,' " spinal pain, and problems with his esophagus, spleen, and pancreas. The defendant alternately attributed these complaints to the bat bite and to his food allegedly having been tampered with.

The report also disclosed that the defendant generally refused to attend therapeutic and competency education group meetings at Whiting, consistently maintaining that he was competent to stand trial and that his problems were exclusively physical. At meal times, he was observed eating with enjoyment and without difficulty. In his free time, he played games, socialized with other patients, and engaged in long telephone conversations with family and friends. He also lifted weights and engaged in vigorous exercise.

In conducting the second competency evaluation, evaluators[3] began conducting psychological testing of the defendant but stopped before completion because of his "performance and invalid response style." Specifically, they noted that his performance on tests was inconsistent, and he "endorsed a high proportion of unusual symptoms that are not seen in patients with

genuine psychiatric illnesses," both of which suggested to evaluators that he may intentionally have been performing poorly. Evaluators diagnosed the defendant with malingering and antisocial personality disorder.

Although the defendant previously had been diagnosed as psychotic, in the second competency report evaluators attributed his behavior to his personality and concluded that there was no indication of a psychiatric disorder, mood disturbance, or cognitive limitation that would prevent him from understanding or emotionally withstanding future court proceedings. They deemed the defendant "capable of engaging in rational, appropriate, and focused discussions when he chooses to do so," and characterized his behavior as "a willful, deliberate effort to portray himself as seriously ill in an effort to thwart the judicial system." Accordingly, evaluators recommended that the court find the defendant competent to stand trial.

On December 10, 2013, the court, *Clifford, J.*, held a hearing to determine whether the defendant had been restored to competency. McKinley, who was the only witness at the hearing, testified regarding the procedure that staff followed during the defendant's placement at Whiting. She testified that "[we] evaluated any issues that we thought were pertinent, we're interested in providing any interventions that may be necessary, medical, psychiatric or otherwise, and so on a day-to-day basis we evaluate[d] [his] needs . . . ." As noted in the report, McKinley testified that "[the defendant] tended to avoid the competency education groups and some of the therapeutic groups that were offered, but he was also able to participate in a variety of other activities of his choosing. We certainly can't make anyone do anything that they're interested in declining . . . ."

With regard to the process by which evaluators determined that the defendant had been restored to competency, McKinley acknowledged that the defendant had refused to cooperate with attempts to ask him standardized questions for determining competency, as a result of which the finding of competency was based on "observations on a day-to-day basis with the individual, interactions with [the defendant], information from staff on all shifts, and we completed—or attempted to complete—some psychological testing as well." According to McKinley, evaluators accepted the validity of the defendant's prior diagnoses with paranoid schizophrenia, which, she acknowledged, is a permanent illness. On the basis of their own observations and evaluation, however, evaluators unanimously rejected schizophrenia as a diagnosis of the defendant's current condition.[4]

On cross-examination, the prosecutor asked McKinley to comment on the defendant's current behavior in the courtroom. The prosecutor asked, "would you agree with me that the moment I got up to start asking you

questions [the defendant] started coughing; is that correct?" McKinley replied, "I heard him clearing his throat. Yes."[5] McKinley also testified that the defendant's coughing in the courtroom "[was] out of the ordinary from what [she had] known," and "[i]n general at Whiting [the defendant] appeared to be in excellent health and we saw no indication that he was suffering from any illness."

At the conclusion of McKinley's testimony, the court invited counsel to present arguments. Defense counsel commented that "[i]t's unique I think to find so many schizophrenic diagnoses, which are permanent and not transient, and then to not have that at all," but did not argue that the defendant was incompetent, leaving that determination to the court's discretion. The prosecutor, in arguing that the defendant had been restored to competency, emphasized that "there was not one throat clear, not one nose blow, not one cough up until the point that the state got up and started asking [McKinley] questions . . . and it kind of got stronger and louder as we got toward the end."

The court concluded that the defendant had been restored to competency.[6] The court and the defendant then engaged in a lengthy colloquy. The defendant recited a litany of physical complaints and expressed frustration over what he perceived to be two years of inadequate medical treatment by the Department of Correction. The court responded that it would indicate the defendant's request for medical attention on the mittimus.

After a trial to a jury, the defendant was convicted of all charges and sentenced to a total effective sentence of 125 years imprisonment. This appeal followed.

We begin our discussion with the well settled rule that "[t]he conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This rule imposes a constitutional obligation, [on the trial court], to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . [Section] 54-56d (a) codified this constitutional mandate, providing in relevant part: A defendant shall not be tried, convicted or sentenced while the defendant is not competent. [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has

a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) *State* v. *Jordan*, 151 Conn. App. 1, 30–31, 92 A.3d 1032, cert. denied, 314 Conn. 909, 100 A.3d 402 (2014).

"We review the court's determination of competency under an abuse of discretion standard. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Paulino*, 127 Conn. App. 51, 61–62, 12 A.3d 628 (2011).

Several principles guide our determination of whether the court's conclusion that the defendant had been restored to competency was reasonable. First, "[t]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 523–24, 973 A.2d 627 (2009). Second, "[the] court is entitled to consider trial counsel's assertions that his client is competent"; *State* v. *Paulino*, supra, 127 Conn. App. 65; but "need not accept counsel's opinion without question." (Internal quotation marks omitted.) *State* v. *Crawley*, 138 Conn. App. 124, 141, 50 A.3d 349, cert. denied, 307 Conn. 925, 55 A.3d 565 (2012). Third and finally, "a trial court is [not] required to canvass the defendant personally as part of its independent inquiry into his competency to stand trial." *State* v. *Jordan*, supra, 151 Conn. App. 36. With these principles in mind, we turn to the defendant's specific arguments.

A

The defendant first argues that the court erroneously found that he had been restored to competency because he "had been previously found incompetent by a different judge . . . and he was not treated for his mental illness during the intervening period." Instead of treating his mental illness, he argues, "McKinley's team merely conducted a second competency evaluation." The state counters that this argument fails because § 54-56d does not prescribe the type of treatment that a defendant must receive before a judge may find that he has been restored to competency. We agree with the state.

The defendant's claim, that a court's inquiry into whether a defendant previously found incompetent has been restored to competency is controlled by the type of treatment he has received in the interim, finds no support in the relevant statutes or case law. The stan-

dard to be applied by a trial court determining a defendant's competency is the same regardless of whether the defendant was previously found incompetent. See, e.g., *State* v. *Edwards*, 158 Conn. App. 119, 134–37, 118 A.3d 615, cert. denied, 318 Conn. 906, 122 A.3d 634 (2015); *State* v. *Bigelow*, 120 Conn. App. 632, 638, 643–44, 994 A.2d 204, cert. denied, 297 Conn. 916, 996 A.2d 278 (2010). As previously noted, this standard directs the court to determine only whether the defendant is capable of understanding the proceedings against him and assisting with his own defense. *State* v. *Jordan*, supra, 151 Conn. App. 30–31.

In arguing that he did not receive that "treatment" on which a finding of restoration to competency must be predicated, the defendant cites, without analysis, various portions of § 54-56d referring to "treatment." None of these provisions, however, prescribes the type of treatment that a defendant must receive, let alone requires a court to determine whether a course of treatment is adequate, before a court properly may find that he has been restored to competency. See General Statutes § 54-56d (h) (1) (A) (directing court, on finding substantial probability that presently incompetent defendant may be restored to competency, to "[place] . . . the defendant for treatment for the purpose of rendering the defendant competent"); General Statutes § 54-56d (k) (directing court to hold hearing after receiving report and to "determine whether the defendant is competent or is making progress toward attaining competency within the period covered by the placement order"); General Statutes § 54-56d (j) (permitting but not requiring court to request that competency report contain information regarding method of treatment). If the legislature had intended to require the court to inquire into the adequacy of the treatment received, it could have done so. Presented with this legislative omission, it is not a court's role to engraft language onto the statute to require such an inquiry. See *McCullough* v. *Swan Engraving, Inc.*, 320 Conn. 299, 309, 130 A.3d 231 (2016).

On the basis of the foregoing authority, the court did not abuse its discretion when it concluded, without evaluating whether the defendant underwent a particular course of treatment at Whiting, that the defendant was capable of understanding the proceedings against him and assisting with his own defense. *State* v. *Jordan*, supra, 151 Conn. App. 30–31; see *State* v. *Edwards*, supra, 158 Conn. App. 125 (noting that competency report and testimony indicated that defendant's attending psychiatrist did not make specific diagnosis or administer medication during inpatient treatment because defendant exhibited no sign of psychotic disorder, and that disruptive behavior was result of choice).

B

Second, the defendant argues that "[i]nstead of

merely accepting the conclusions of the second competency report, Judge Clifford should have made a further inquiry and/or asked for a third expert opinion regarding [the defendant's] competency" for two reasons: (1) the report's reliability was questionable because the "conclusion [therein] that [the defendant] was not suffering from a major mental illness was so contrary to [prior] conclusion[s] reached by Dr. Bonetti, Dr. Downer . . . and [others]"; and (2) the report was internally inconsistent because it reported that the defendant was obsessed with his medical condition yet concluded that his physical complaints did not prevent him from engaging in reasonable discussions. We disagree.

"It is constitutionally permissible for the burden to be placed on the defendant to prove, by a preponderance of the evidence, that he is incompetent . . . ." *State* v. *Dort*, 315 Conn. 151, 162, 106 A.3d 277 (2014). Accordingly, "[o]nce the court grants a motion for a competency examination, the burden rests on the [defendant as] moving party to prove that [he] is not competent . . . ." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 23, 751 A.2d 298 (2000); see General Statutes § 54-56d (b). The burden remains on the defendant, as the moving party, to prove that he has not been restored to competency. See, e.g., *State* v. *Bigelow*, supra, 120 Conn. App. 643. At the competency hearing, "[t]he court *may* call its own witnesses and conduct its own inquiry." (Emphasis added.) General Statutes § 54-56d (b). The court is equally free, however, to decide the issue of competency solely on the basis of the evidence presented by the parties. See General Statutes § 54-56d (b).

In the present case, the court was not required to seek out additional evidence to resolve either of the inconsistencies the defendant cites before determining that he had been restored to competency. The burden was on the defendant to prove that he still was incompetent. At the second competency hearing, the court heard extensive testimony from McKinley with regard to why her team concluded in the second competency report that the defendant did not suffer from a psychiatric affliction. The defendant did not present evidence, apart from the first competency report, to rebut either that conclusion[7] or the diagnosis of malingering.

The court also had before it the evaluators' conclusion that the defendant was "capable of engaging in rational, appropriate, and focused discussions when he chooses to do so" and that his behavior was "a willful, deliberate effort to portray himself as seriously ill in an effort to thwart the judicial system." Defense counsel elected not to challenge McKinley with regard to how the defendant reportedly could engage in such rational discussions despite his obsession with his medical conditions. The court was entitled to rely on the foregoing evidence in the record, which supported its conclusion

that the defendant was capable of understanding the proceedings against him and assisting with his own defense. Accordingly, we conclude that the court correctly applied the law and that its finding of competency based on the second competency report and McKinley's testimony was reasonable.

C

Third and finally, the defendant argues that the court abused its discretion when it "appeared to" base its competency finding exclusively on the second competency report even though it should have (1) reviewed the first competency report and transcripts of the defendant's prior court appearances, (2) elicited defense counsel's opinion as to whether the defendant had a rational understanding of the case and could assist in his defense, and (3) canvassed the defendant or taken into account personal observations of his courtroom behavior. We are not persuaded.

We again note that the applicable standard of review limits us to determining "whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Paulino*, supra, 127 Conn. App. 62. As our discussion of the defendant's prior arguments makes clear, the record satisfies us that the court reasonably concluded, on the basis of a proper application of the law, that the defendant had been restored to competency. In any event, both the record and the applicable legal principles establish that the court acted properly.[8] First, defense counsel explicitly chose to leave the determination of competency to the court's discretion, pointing out only that "[i]t's unique, I think, to find so many schizophrenic diagnoses, which are permanent and not transient, and then to not have that at all." Even if defense counsel had asserted that the defendant was still incompetent, the court was free to accept or reject that opinion. *State* v. *Crawley*, supra, 138 Conn. App. 140–41; *State* v. *Paulino*, supra, 127 Conn. App. 64–65.

Second, although the court did not canvass the defendant before deciding that he had been restored to competency, "a trial court is [not] required to canvass the defendant personally as part of its independent inquiry into his competency to stand trial." *State* v. *Jordan*, supra, 151 Conn. App. 36. The court was at liberty to take into account the defendant's behavior during the competency hearing, which, the record indicates, was consistent with the evaluators' conclusion that he was wilfully trying to thwart the judicial process. The prosecutor specifically drew the court's attention to this behavior by asking McKinley to confirm his observation that the defendant appeared to have timed a coughing fit to coincide with the beginning of cross-examination. McKinley did so, and she also confirmed that such conduct was consistent with at least one prior occasion

on which the defendant apparently timed a coughing fit deliberately. See footnote 5 of this opinion. The court also personally observed the defendant's behavior during a lengthy conversation with the defendant at the conclusion of the hearing. Counsel for the defendant did not ask the court to reconsider its ruling on the basis of that exchange.

For the foregoing reasons, we conclude that the trial court properly exercised its discretion in determining that the defendant had been restored to competency.

II

The defendant's second claim is that the trial court erred by removing him from the courtroom during jury selection. This claim is threefold. First, he contends that because he was unable to control the behavior that led to his removal, he did not knowingly and intelligently waive his constitutional right to be present for jury selection. Second and relatedly, he contends that on the basis of this behavior, the court should have ordered, sua sponte, another competency evaluation. Finally, he contends that instead of placing him in the courthouse lockup, the court should have placed him in a conference room adjoining the courtroom or continued the proceedings to fashion a better accommodation. We are not persuaded.

The following history of the jury selection process is relevant to this claim. On January 27, 2014, the court, *Vitale, J.*, stated to defense counsel that "I've been patient to this point, but my patience will have its limits at some point regarding your client's conduct."[9] On January 29, 2014, the court told defense counsel that "if [the defendant's behavior] becomes disruptive, and it's approaching that now, if it continues then the court is going to have to unfortunately take action which I don't want to do. But, I'm not going to allow the proceedings to be disrupted by those types of sounds based on what I've seen happen before during some preliminary hearings and the [second competency report]. So that's a choice he'll have to make."

At the conclusion of that day's proceedings, the court made a record of the defendant's behavior "in the event [that] other actions are going to be required."[10] Then, after noting that it previously had admonished the defendant to refrain from such behavior, the court observed that he had "managed to stop during my lengthy indoctrination to the jury this morning, during his lawyer's remarks, during [the prosecutor's] remarks, demonstrating, obviously, he can stop if he chooses to, and he has engaged in this behavior on the record before me prior to the court ordering a competency exam. And obviously the court and counsel are both familiar with the results of the competency exam by Whiting dated December 4, 2013, which makes it abundantly clear that there is no medical or psychiatric reason for this

behavior, that he's in complete control of his behavior, and that there's no psychiatric or medical impairment that would cause this conduct other than a direct effort on his part to attempt to disrupt the proceedings, and it's beyond simply clearing his throat." Defense counsel acquiesced to the court's characterization of the defendant's behavior without objection and urged the defendant to behave appropriately.

On January 31, 2014, the court announced that it would "need to address" the defendant regarding his continued disruptive behavior because its prior admonitions had been in vain. Defense counsel requested, in the absence of a "place, as there are in other courts, where he could be able to hear things that are going on but other people could not hear him," that the defendant be placed in a conference room adjoining the courtroom instead of in the courthouse lockup. The court denied the request because the conference room was not sufficiently secure.[11] Defense counsel objected to the defendant being placed in the lockup.

The court then canvassed the defendant to determine whether he understood that his conduct could result in a waiver of his constitutional right to be present for jury selection. In response, the defendant once again complained of an inability to obtain proper treatment for his numerous medical complaints. The court replied that it had attempted to address those complaints, that the second competency report indicated that the defendant could choose to control his behavior, and that, already having warned the defendant, the court would no longer tolerate the behavior.

The court ordered that the defendant be taken to the lockup after again noting that the adjoining conference room was insufficiently secure, advising the defendant that it would permit him to return to the courtroom upon request and with appropriate assurances that he would abstain from further disruptive behavior. Defense counsel asked for permission to consult with the defendant in the lockup before picking any other juror. The court indicated that it would deny the request unless defense counsel could produce legal authority for granting it.[12] Finally, the court instructed defense counsel to ask the defendant during the upcoming luncheon recess whether he wished to return to the courtroom.

After the luncheon recess, defense counsel reported that the defendant had declined to return to the courtroom. The court recessed briefly so that defense counsel once again could invite the defendant to return; again, the defendant declined the invitation.

On that day, two jurors were selected in the defendant's absence. Before selecting one juror, defense counsel asked to consult with the defendant in the lockup. The court denied the request, noting that the

defendant had "waived his presence by his conduct."

When jury selection resumed on February 3, 2014, the defendant was present.[13] Jury selection concluded without recorded incident.

"We begin with a fundamental tenet of criminal jurisprudence: a criminal defendant has a constitutional right to be present at all critical stages of his or her prosecution. *Rushen* v. *Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) (right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant). . . . Although the constitutional right to be present is rooted to a large extent in the confrontation clause of the sixth amendment, courts have recognized that this right is protected by the due process clause in situations [in which] the defendant is not actually confronting witnesses or evidence against him. *Snyder* v. *Massachusetts*, 291 U.S. 97, 105–106, 108, 54 S. Ct. 330, 78 L. Ed. 674 (1934); see *State* v. *Jarzbek*, 204 Conn. 683, 691–92, 529 A.2d 1245 (1987) (recognizing that right to be present similarly is guaranteed by article first, § 8, of our state constitution), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988)." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, supra, 158 Conn. App. 138.

"[A trial] court may infer the defendant's waiver [of the right to be present] from the totality of his acts and conduct, so long as the defendant has been adequately informed that the trial would continue in his absence." *State* v. *Gonzalez*, 205 Conn. 673, 689, 535 A.2d 345 (1987). "The [United States] Supreme Court [in *Illinois* v. *Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed 2d 353 (1970)] opined that [a]lthough mindful that courts must indulge every reasonable presumption against the loss of constitutional rights . . . a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. . . . The defendant may reclaim his constitutional right to be present if he demonstrates that he is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, supra, 158 Conn. App. 140; see Practice Book § 42-47.[14]

"[T]he trial court has broad discretion in determining whether the removal of an accused from the courtroom is an appropriate measure in light of the nature and severity of the improper conduct." *State* v. *Jones*, 281 Conn. 613, 637, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). "Our appellate decisions illustrate the type of conduct that has been

deemed to constitute valid waivers of the right to be present at a critical stage of the prosecution. See . . . *State* v. *Gonzalez*, [supra, 205 Conn. 689] (defendant forfeited right to be present by acting in bizarre and disruptive manner); *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987) (defendant who was removed for interrupting voir dire, and then declined to return when sheriff informed him he could do so, unequivocally waived his right to attend jury selection)." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, supra, 158 Conn. App. 140–41.

Finally, "[o]nce the trial court determine[s] . . . that the defendant [is] competent to stand trial, it [does] not have a further obligation to inquire whether the defendant's forfeiture of his right to be present was the result of incompetence . . . ." *State* v. *Gonzalez*, supra, 205 Conn. 689. With these principles in mind, we turn to the defendant's specific arguments.

We consider together the defendant's related arguments (1) that because he was unable to control the behavior that led to his removal, he did not knowingly and intelligently waive his constitutional right to be present for jury selection[15] and (2) that on the basis of this behavior, the court should have ordered, sua sponte, another competency evaluation before determining that he had waived his right to be present. We disagree.

The court properly determined that the defendant impliedly waived his right to be present by his disruptive conduct. The record reveals that the court warned the defendant not once but several times that jury selection would continue in his absence if he did not conduct himself appropriately. After each warning, the defendant continued to engage in the same loud, distracting, and offensive behavior. From his continued disruption of the proceedings, the court permissibly inferred the defendant's waiver of his right to be present for jury selection. See *State* v. *Gonzalez*, supra, 205 Conn. 689–90.

The court also was not required to order another competency evaluation on the basis of the behavior that led to the defendant's exclusion from jury selection. His behavior did not materially differ from the behavior he exhibited before and during the prior determination of competency—namely, his loud, suspiciously timed coughing fits and associated insistence that he was suffering from various untreated medical conditions. "When a court has previously found a defendant competent and that determination is premised on proper consideration of the relevant factors, the court's inquiry when deciding whether to order another competency evaluation is whether the defendant's condition has materially changed since [the] previous finding of competency." (Internal quotation marks omitted.) *State* v. *Edwards*, supra, 158 Conn. App. 134.

As previously noted, when a court has determined that a defendant is competent to stand trial, in the absence of such a material change "it [does] not have a further obligation to inquire whether the defendant's forfeiture of his right to be present was the result of incompetence . . . ." *State* v. *Gonzalez*, supra, 205 Conn. 689; see also id., 687, 689 (court obligated to inquire into defendant's competency when informed midtrial that defendant had been given antipsychotic drug and attempted suicide but, having concluded that defendant nevertheless was competent, court not required to inquire into effect of antipsychotic drug on defendant's forfeiture of right to be present).

In the present case, the court's conclusion that the defendant had waived his right to be present was "based on what [the court had] seen happen before during some preliminary hearings and the [second competency report]"[16] as well as its observations during jury selection. The court observed that the defendant refrained from the disruptive conduct during its indoctrination of the jury, "demonstrating [that] obviously he can stop if he chooses to . . . ." On the basis of the defendant's behavior, which remained consistent throughout the proceedings, the court concluded that "it [is] abundantly clear that there is no medical or psychiatric reason for this behavior, that he's in complete control of his behavior, and that there's no psychiatric or medical impairment that would cause this conduct other than a direct effort on his part to attempt to disrupt the proceedings . . . ." The defendant did not produce evidence demonstrating that this pattern of behavior differed at all, let alone materially, from his conduct at prior proceedings.[17]

We conclude that the court properly exercised its discretion in declining to order another competency evaluation on the basis of its independent inquiry into the defendant's competency. See *State* v. *Edwards*, supra, 158 Conn. App. 137 (holding that court did not abuse discretion in relying on observations, input, and previous competency evaluation as bases for not ordering additional competency evaluation); *State* v. *Jordan*, supra, 151 Conn. App. 37–38 (holding that failure to order additional competency evaluation not abuse of discretion where defendant did not produce evidence that condition had changed since prior evaluation and record supported court's determination that defendant's behavior was attempt to disrupt proceedings); *State* v. *Johnson*, 22 Conn. App. 477, 489, 578 A.2d 1085 (defendant's "obstreperous, uncooperative or belligerent behavior did not obligate the court to order a competency examination" where defendant had "ability to cooperate but did not want to do so"), cert. denied, 216 Conn. 817, 580 A.2d 63 (1990).

We finally consider the defendant's argument that the court abused its discretion by placing him in the

courthouse lockup when he was removed from jury selection. Specifically, he argues, the court erred "in not placing [him] in the conference room because [it] did not make a record as to why any security concerns could not be addressed by the judicial marshals," in failing to explore all possible alternatives to placing him in the lockup, such as using closed circuit television, and in failing to continue the proceedings "until a better accommodation could be made." The court compounded its error, he argues, by subsequently denying defense counsel's request to consult with the defendant before selecting jurors in his absence. We are not persuaded.

"[T]here are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; [or] (3) take him out of the courtroom until he promises to conduct himself properly." *Illinois* v. *Allen*, supra, 397 U.S. 343–44. Our rules of practice leave to the court's discretion the determination of where a defendant who has been taken out of the courtroom shall be placed, provided only that the defendant must remain in the building in which the courthouse is located. See Practice Book § 42-47. "[T]he trial judge is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the [commission] of other crimes . . . ." (Internal quotation marks omitted.) *Sekou* v. *Warden*, 216 Conn. 678, 691–92, 583 A.2d 1277 (1990).

Although our appellate courts have viewed favorably a court providing an accommodation by which a defendant who has waived the right to be present may observe the proceedings; see id., 696 ("the court permitted [the defendant] to choose between two equally permissible alternatives: presence under restraint, or absence coupled with mechanical observation of the proceedings"); *State* v. *Strich*, 99 Conn. App. 611, 618–19, 915 A.2d 891 (holding that where defendant placed in holding cell equipped with speaker system, there was "no flaw, constitutional or otherwise" in trial court's removal of defendant from courtroom), cert. denied, 282 Conn. 907, 920 A.2d 310, cert. denied, 552 U.S. 901, 128 S. Ct. 225, 169 L. Ed. 2d 171 (2007); they have not suggested that such means are constitutionally required.

In the present case, the court properly exercised its discretion in removing the defendant to the lockup once it determined that the defendant had by his conduct waived his right to be present for jury selection. Contrary to the defendant's assertion that the court did not make a record of its reason for removing him to the lockup instead of to the conference room adjoining the courtroom, the court expressly noted that the marshals

could not adequately secure the conference room, which adjoined a public hallway and, therefore, was an inappropriate place in the court's opinion for a defendant facing trial on allegations of murder. See footnote 11 of this opinion. The court was in the best position to weigh the risks associated with placing the defendant in the conference room. Having determined that placing the defendant in the conference room would be imprudent, the court was permitted to place the defendant in the courthouse lockup and was not required to delay the proceedings until all possible alternatives could be vetted.

Having waived his right to be present for jury selection and having been properly removed to the lockup, the defendant was not entitled to confer with his attorney before the subsequent selection of any juror. Defense counsel did not provide the trial court with any binding legal authority in support of his argument that such consultation was required, nor has the defendant provided any here.[18] Also, the court twice dispatched defense counsel to the lockup to inquire whether the defendant wished to return to the courtroom for jury selection. The defendant twice declined the invitation to return. If the defendant had wanted to confer with his counsel before any juror was selected, he could have made the required assurances and returned to the courtroom. "[N]o defendant has a unilateral right to set the time or circumstances under which he will be tried. . . . We cannot permit an accused to elect to pursue one course at the trial and then . . . to insist on appeal that the course which he rejected at the trial be reopened to him . . . . [T]he protection which could have been obtained was plainly waived . . . . The court only followed the course which [the defendant] himself helped to chart . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, supra, 202 Conn. 80–81 (court did not err in proceeding with jury selection after defendant voluntarily absented self).

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 54-56d provides in relevant part: "(b) A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

"(d) If the court finds that the request for an examination is justified and that . . . there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, the court shall order an examination of the defendant as to his or her competency. . . . [E]xaminers shall prepare and sign . . . a written report and file such report with the court . . . ."

[2] During the time he was in federal custody, the defendant claimed to

have been bitten by a bat and to have contracted rabies from that bite. There never has been any medical confirmation of that claim. The defendant currently is serving a sentence of twenty-six years and eight months on unrelated federal charges.

[3] The team of Whiting staff evaluating the defendant included McKinley, Lori Calwell, a psychologist, and Steven Lazrove, a psychiatrist.

[4] Defense counsel examined McKinley as follows:

"Q. In [your] review of [the defendant's] records [from the Federal Bureau of Prisons] you found out his . . . diagnosis [was] schizophrenia paranoid type . . . is that correct?

"A. That is what they indicated in those records, yes.

"Q. Do you have reason to doubt that diagnosis?

"A. I was not part of those evaluations so we accept that information as written.

"Q. And schizophrenia paranoid type, is that a neurotic condition or psychotic condition?

"A. It's a psychotic condition.

"Q. And does that, can that condition be transient, come and go, or is it a more permanent condition?

"A. It is considered a permanent condition. . . .

"Q. Okay. Fair enough. And in addition to that, you had the opportunity to see the Connecticut Department of Correction records that indicated diagnoses such as . . . schizophrenia with paranoid and somatic delusions. Again, no reason to doubt those diagnoses either?

"A. Again, those are the opinions of other evaluators and—and we accept that information. . . .

"Q. Okay. So can—is there any way that you can explain why other professionals have found him consistently schizophrenic and you did not?

"A. I certainly can't give you any information about their assessment and what they saw at the time. It is not unusual for different evaluators to have varying opinions based on the presentation of the individual and the circumstances . . . ."

[5] A related exchange between the prosecutor and McKinley was as follows:

"Q. And at one point as well, and if you could clarify. Was there a point in the observations by individuals employed by Whiting, is it a correct statement, that at one point [the defendant] was in his particular unit or his particular room, so to speak, and not coughing or complaining of any discomfort until apparently staff were outside of his door and he noticed that? . . .

"A. There were records from the Department of Correction that noted a similar circumstance."

[6] The court stated the following: "I think it's at least clear under the presumption of competency, and even though there was a finding of incompetency based on what appears to be a detailed report that's defense exhibit one for purposes of the reconsideration of competency, and obviously from the testimony of the witness, that I'm going to find that the defendant has been restored to competency and is presently able to understand the nature of the charges and does have the ability to assist counsel in his defense. I am finding [this] based on the testimony and the exhibit and listening, obviously, to the arguments of counsel that he is competent at this time to stand trial."

[7] Even if the Whiting evaluators had agreed with prior diagnoses of schizophrenia, the defendant's diagnosis with a mental illness alone would not have disposed of the competency inquiry. "[C]ompetence to stand trial . . . is not defined in terms of mental illness. An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." (Internal quotation marks omitted.) *State* v. *Bigelow*, supra, 120 Conn. App. 642–43.

[8] As to the defendant's claim that the court ignored the first competency report, the record is somewhat ambiguous. Before the second report was entered into evidence, the court stated that "[t]here has probably been a previous report, so I don't know how you want to mark this." Later, the court asked the courtroom clerk, "[d]o we have the reports too?" and the clerk responded affirmatively.

Nevertheless, as we have discussed, the material findings of the first report—namely, that the defendant had been diagnosed as schizophrenic and delusional—were brought out during defense counsel's examination of McKinley at the second competency hearing. Additionally, the defendant failed to file a motion for articulation to allow the court to clarify whether it considered the first report. Accordingly, "[c]ognizant that we must make every reasonable presumption in favor of the correctness of the court's

decision . . . we are left to conclude on the basis of our review of the . . . record provided that the court acted reasonably . . . ." *Gordon* v. *Gordon*, 148 Conn. App. 59, 67–68, 84 A.3d 923 (2014).

[9] The court did not elaborate on the conduct to which it referred.

[10] Accordingly, the court noted that the defendant had "loudly and exaggeratedly inhaled through [his] nose summoning phlegm and nasal fluids and then, having done so, loudly and exaggeratedly cleared his throat and then loudly and exaggeratedly spit the contents into a cup which is at counsel table." The court characterized this behavior as "disgusting and disruptive."

[11] The court described the conference room as "adjacent to the public hallway, [which] I don't believe is an appropriate place to place someone who's facing a trial on a murder allegation."

[12] The record does not disclose that defense counsel ever produced such authority.

[13] Immediately after the start of the proceedings on that day, the prosecutor noted that "just as I got up to address the court [the defendant] started clearing his throat and making those sounds again with his throat, and spitting into the cup . . . ." The court acknowledged the prosecutor's observation but decided to proceed with the defendant present.

[14] Practice Book § 42-47 provides: "Upon the direction of the judicial authority, a defendant may be removed from the courtroom during trial or hearing when the defendant's conduct has become so disruptive that the trial or hearing cannot proceed in an orderly manner. The judicial authority shall advise the defendant that the trial or hearing will continue in the defendant's absence. A defendant who has been removed shall remain present in the court building while the trial or hearing is in progress. At the time of the defendant's removal, the judicial authority shall advise the defendant that the defendant may request to be returned to the courtroom if, at the time of making such request, the defendant assures the judicial authority that the defendant shall not engage in disruptive conduct. Whenever the defendant is removed, the judicial authority shall instruct the jurors that such removal is not to be considered in assessing the evidence or in the determination of the case."

[15] The defendant also argues that instead of removing him from the courtroom, Judge Vitale should have given him a cough drop, water, or a mask of some kind, or ordered the courtroom microphones to be repositioned to lessen the distraction caused by his noise. As support for this argument, he cites an observation in the second competency report that throat lozenges "had a good effect" on him at Whiting, but he offers no legal authority for the argument that the court was obligated to provide such accommodations before concluding that he had waived his right to be present. We decline to review this inadequately briefed argument. See, e.g., *State* v. *Davis*, 159 Conn. App. 618, 629 n.3, 123 A.3d 142 ("[b]ecause the defendant has not briefed this argument, we will not pass upon it"), cert. denied, 319 Conn. 951, 125 A.3d 530 (2015).

[16] There is no "bright line rule as to when a competency report becomes stale." (Internal quotation marks omitted.) *State* v. *Jordan*, supra, 151 Conn. App. 37.

[17] We disagree that the defendant's repeated refusal to return from the lockup should have alerted the court that he was unable to assist with his own defense because there is no indication that these refusals, like his courtroom behavior, were not the product of choice.

[18] The defendant cites only a concurring opinion; see *Illinois* v. *Allen*, supra, 397 U.S. 351 (Brennan, J., concurring) ("[W]hen a defendant is excluded from his trial, the court should make reasonable efforts to enable him to communicate with his attorney and, if possible, to keep apprised of the progress of his trial. Once the court has removed the contumacious defendant, it is not weakness to mitigate the disadvantages of his expulsion as far as technologically possible in the circumstances."); and a case that is plainly distinguishable on its facts. See *United States* v. *Fontanez*, 878 F.2d 33, 36–37 (2d Cir. 1989) (defendant whose absence was result of being taken into custody for unrelated crime did not waive right to be present during his trial).